# MARY LOU MATEY *v.* ESTATE OF SARAH DEMBER ET AL.
## (AC 24266)

Lavery, C. J., and Schaller and Peters, Js.

Argued May 26—officially released September 21, 2004

*Laurence V. Parnoff,* for the appellant (plaintiff).

*Yinxia Long,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant second injury fund).

*Opinion*

LAVERY, C. J. The plaintiff, Mary Lou Matey, appeals from the judgment of the compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner). On appeal, the plaintiff claims that (1) the board improperly calculated the applicable cost of living adjustments to her compensation rate, (2) the commissioner improperly placed a higher burden on her because the defendant second injury fund (fund) paid her benefits and (3) the commissioner improperly failed to award her statutorily required interest. We do not reach the substantive issues raised by the plaintiff and instead dismiss the appeal for lack of a final judgment.

A comprehensive and exhaustive recitation of the facts and procedural history of this long-lived case is not necessary for the resolution of the present appeal. It is sufficient to note that a detailed background can be found in our Supreme Court's decision in *Matey* v. *Estate of Dember,* 256 Conn. 456, 462–72, 774 A.2d 113 (2001), and that we need only set out an abbreviated summary here.

On August 9, 1984, the plaintiff, employed as a live-in home care aid for the decedent Sarah Dember, allegedly suffered injuries in an automobile accident during the course of her employment. The plaintiff subsequently filed a notice of claim for workers' compensation benefits against Dember's estate. Dember had died on Octo-

ber 13, 1994. The claim against the estate was denied because the plaintiff failed to present her claim within the time period set forth by the Probate Court, and the fund was so notified pursuant to General Statutes § 31-355.[1] The plaintiff also filed a separate action against the city of Waterbury. See *Matey* v. *Waterbury*, 24 Conn. App. 93, 585 A.2d 1260, cert. denied, 218 Conn. 908, 588 A.2d 1383 (1991). The claim against the city ultimately was settled for $386,791.78 in 1990. *Matey* v. *Estate of Dember*, supra, 256 Conn. 467.

After years of hearings and decisions by the commissioner and review by the board, the fund filed the most recent appeal to our Supreme Court. One of the issues raised in that appeal was whether the board improperly affirmed the commissioner's ruling that denied the fund's claim that, pursuant to General Statutes § 31-293, it was entitled to reduce any award by the amount recovered by the plaintiff in the settlement of her action against the city of Waterbury. Id., 488. Our Supreme Court specifically noted that neither the commissioner nor the board had ever addressed that issue. Id., 489–90. Furthermore, the court held that the board had abused its discretion by denying the fund's request for a remand to the commissioner for consideration of that issue. Id., 490. The case was remanded to the board with direction to remand the case to the commissioner for a hearing limited to the issue of whether the fund was entitled to a credit for the plaintiff's recovery from the Waterbury settlement. Id., 494.

Subsequent to our Supreme Court's remand order, the commissioner, after two formal hearings, issued his finding and award dated January 29, 2002. The commissioner stated that "[w]hile a number of issues were

---

[1] "In the event that an employer or its insurer fails or is unable to pay an injured worker's benefits, such compensation shall be paid from the fund pursuant to General Statutes § 31-355." *Badolato* v. *New Britain*, 250 Conn. 753, 762, 738 A.2d 618 (1999).

presented . . . [at] the hearings, the decision . . . only involves a determination of what benefits, if any, are due to the [plaintiff] for the period from July 1, 1995, through December 31, 2001." The commissioner concluded that the plaintiff was temporarily totally disabled from July 1, 1995, to December 31, 2001, and that she was entitled to temporary disability payments along with any appropriate cost of living adjustments.

After a formal hearing held on May 13, 2002, the commissioner issued another finding and award on May 20, 2002. The commissioner found that the plaintiff was temporarily totally disabled from January 1, 2002, until June 30, 2002, and ordered that she receive benefits and any appropriate cost of living adjustments for that time period. The commissioner also ordered additional formal hearings at six month intervals, at which the plaintiff would be required to provide updated medical reports documenting her disability claims. The issue specified in our Supreme Court's remand of whether the fund was entitled to a credit for the plaintiff's settlement with the city of Waterbury was not addressed in either the January 29, 2002, or the May 20, 2002 finding and award issued by the commissioner. The plaintiff then filed an appeal to the board.

On May 14, 2003, the board issued its decision. It stated that our Supreme Court had "held that the fund was entitled to consideration of its claims for a credit pursuant to § 31-293. Following the Supreme Court's opinion . . . additional proceedings were held . . . . While the commissioner's January 29, 2002 finding and award reflects a number of issues presented, the commissioner's finding and award was limited to a determination of what benefits, if any, were due to the [plaintiff] for the period of July 1, 1995, through December 31, 2001." The board did not address the issue of a possible credit from the Waterbury settlement; instead, it stated that the issues before it were "(1) whether the trial

commissioner erred in his calculation of the [plaintiff's] compensation rate, (2) whether the trial commissioner erred in finding the [plaintiff] totally disabled through December 31, 2001, [and] (3) whether the [plaintiff] was entitled to interest pursuant to [General Statutes §§ 31-300 and 31-303.]"

The board agreed that the commissioner improperly had calculated the temporary total disability benefits, including cost of living adjustments, to which the plaintiff was entitled. The board recalculated the benefits to be awarded to the plaintiff. The board rejected the plaintiff's remaining claims and affirmed the commissioner's decision except as corrected. This appeal followed.

At the outset, we identify the relevant legal principles that govern our resolution of the matter before us. "The ground rules that govern workers' compensation appeals are well established. These ground rules have their origins in two sets of statutes. One set of statutes delineates the appellate jurisdiction of [the Supreme Court] and the Appellate Court. Another set of statues determines the rights and duties inherent in the worker's compensation system." *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 159, 740 A.2d 796 (1999).

We begin with a review of the general principles concerning appellate jurisdiction. "It is well established that [a]ppeals are permitted only from final judgments." (Internal quotation marks omitted.) *Ahneman* v. *Ahneman*, 243 Conn. 471, 478, 706 A.2d 960 (1998). Our Supreme Court has stated that "[b]ecause our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . Additionally, with the exception of certain statutory rights of appeal not relevant here, *our jurisdiction*

*is restricted to appeals from final judgments.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford,* 262 Conn. 240, 245, 811 A.2d 1272 (2002). Furthermore, we are mindful that "[t]he lack of [a] final judgment . . . implicates the subject matter jurisdiction of this court." *Southport Manor Convalescent Center, Inc.* v. *Kundrath,* 41 Conn. App. 747, 748, 677 A.2d 977 (1996).

"The requirement of finality is thus not a mere technicality, but is an important factor in maintaining a smoothly functioning judicial system." 4 Am. Jur. 2d 709–10, Appellate Review § 86 (1995). Limiting appeals to final judgments serves the public policy of minimizing delay and interference with trial court proceedings. *White* v. *White,* 42 Conn. App. 747, 749, 680 A.2d 1368 (1996). Additionally, the final judgment requirement functions to avoid piecemeal appeals. *Melfi* v. *Danbury,* 38 Conn. App. 466, 468, 661 A.2d 1046 (1995).

We now turn to the more specific rules concerning appeals in the context of workers' compensation. "[General Statutes §] 31-301b governs appeals to the Appellate Court from decisions of the review board. . . . [T]he practice and procedure for [workers' compensation] appeals to the appellate court . . . shall conform to the rules of practice governing other appeals. Practice Book [§ 76-1]. . . . *[I]n order for a decision of the review board to be appealable under § 31-301b, it must be a decision that has the same elements of finality as a final judgment rendered by a trial court.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Cantoni* v. *Xerox Corp.,* supra, 251 Conn. 160; see also *Fantasia* v. *Tony Pantano Mason Contractors, Inc.,* 54 Conn. App. 194, 199–200, 732 A.2d 822, cert. denied, 250 Conn. 927, 738 A.2d 655 (1999). We also note that "[w]ith regard to such appeals, references in the rules of appellate procedure to trial court or trial judge shall, where applicable, be

deemed to mean the individuals who comprised the board which rendered the decision from which the appeal was taken . . . ." (Internal quotation marks omitted.) *Conetta* v. *Stamford*, 246 Conn. 281, 290, 715 A.2d 756 (1998); see also Practice Book § 76-6.

The threshold question before us is whether the board's failure to comply with our Supreme Court's mandate found in its remand order prevented its decision from qualifying as an appealable final judgment.[2] Neither party briefed this issue. We raised it sua sponte at oral argument because, as we have noted, the lack of a final judgment implicates the subject matter jurisdiction of this court and requires our independent review of finality no matter how the issue was raised. See *Quinn* v. *Standard-Knapp, Inc.*, 40 Conn. App. 446, 447, 671 A.2d 1333 (1996).[3]

Our Supreme Court's remand order stated: "[*T*]*he case is remanded to the board with direction to remand the case to the commissioner for a hearing limited to the issue of whether the fund is entitled to a credit for the plaintiff's third party recovery from the settlement of her action against the city of Waterbury.*" (Emphasis added.) *Matey* v. *Estate of Dember*, supra, 256 Conn. 494.

We have stated that "[i]n carrying out the direction of a mandate [of an appellate court], the Superior Court is limited to the specific direction of the mandate inter-

---

[2] "A 'mandate' is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed." 5 Am. Jur. 2d 446, Appellate Review § 776 (1995).

[3] We did not request the parties to submit supplemental briefs on the final judgment issue. We note that "in matters involving subject matter jurisdiction, we have exercised our discretion in determining whether to order parties to brief the issue or to decide the issue in lieu of such an order." *Chief of Police* v. *Freedom of Information Commission*, 68 Conn. App. 488, 491 n.4, 792 A.2d 141 (2002).

preted in the light of the opinion. . . . Furthermore, [t]he trial court cannot adjudicate rights and duties not within the scope of the remand. . . . *It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered,* even though it may be one that the appellate court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Citation omitted; emphasis added; internal quotation marks omitted.) *Patron* v. *Konover,* 43 Conn. App. 645, 650–51, 685 A.2d 1133 (1996), cert. denied, 240 Conn. 911, 690 A.2d 400 (1997); see also *Higgins* v. *Karp,* 243 Conn. 495, 502, 706 A.2d 1 (1998); 5 Am. Jur. 2d, Appellate Review §§ 784, 786 (1995) (specific instructions of appellate court must be followed exactly). We emphasize that "[c]ompliance means that the direction is not deviated from." *Nowell* v. *Nowell,* 163 Conn. 116, 121, 302 A.2d 260 (1972). In this case, both the commissioner and the board were obligated to comply with our Supreme Court's order.

It is undisputed that neither the commissioner nor the board has addressed the subject of our Supreme Court's remand order in their decisions.[4] The only deci-

---

[4] At oral argument, the parties indicated that a hearing was held regarding the Waterbury settlement issue and briefs have been submitted, but the commissioner has not yet issued its opinion. We reject the suggestion that it would be proper in this case to simply wait for the commissioner's opinion for several reasons. First, this would bypass review by the board. "It is axiomatic that appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the compensation review division." (Internal quotation marks omitted.) *Ericson* v. *Perreault Spring & Equipment Co.,* 38 Conn. App. 71, 72, 658 A.2d 982 (1995); see also General Statutes § 31-301b; *Fantasia* v. *Tony Pantano Mason Contractors, Inc.,* supra, 54 Conn. App. 200 (failure to obtain review by board implicates subject matter jurisdiction of court). Additionally, our Supreme Court has stated that "[t]he expeditious resolution of disputes counsels against appellate review of trial court rulings that do not finally dispose of all the issues

sion that could be rendered in light of our Supreme Court's remand was one that necessarily resolved the Waterbury settlement issue. We have stated that *"[w]hen a case is remanded for a rehearing, the trial court's jurisdiction and duties are limited to the scope of the order. . . .* The trial court should not deviate from the directive of the remand." (Citations omitted; emphasis in original.) *Leabo* v. *Leninski,* 9 Conn. App. 299, 301, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987); see also 5 Am. Jur. 2d, 453, Appellate Review § 784 (1995) (lower court vested with jurisdiction only to extent conferred by higher court's opinion and mandate). In the present case, the jurisdiction of both the commissioner and the board was limited to the scope of the remand. Because the Waterbury settlement issue was raised specifically by our Supreme Court in its remand and was not decided by either the commissioner or the board, a pending, undecided issue remains. Accordingly, as a result of the remaining undecided Waterbury settlement issue, the decision cannot be classified as a final judgment.

While the commissioner was free to resolve other issues, as long as those issues were consistent with the mandate from our Supreme Court, he was required to resolve the Waterbury settlement issue mandated by the remand order. The proceedings before the commissioner cannot be completed until the commissioner addresses that issue. We will not engage in a piecemeal review of the plaintiff's claims, particularly where the unresolved settlement issue is intertwined with at least

---

between the litigating parties." *Schieffelin & Co.* v. *Dept. of Liquor Control,* 202 Conn. 405, 409, 521 A.2d 566 (1987). Finally, we are mindful that "[b]ecause a final judgment is a *condition precedent* to the taking of an appeal . . . we do not ask if jurisdiction arose at some time during the appeal, but determine only whether we had jurisdiction over the appeal at the time it was taken." (Citation omitted; emphasis in original.) *Annecharico* v. *Patterson,* 38 Conn. App. 338, 339–40, 660 A.2d 880 (1995).

some, if not all, of the issues raised by the plaintiff.[5] Simply put, until the Supreme Court's remand order is complied with, there can be no final judgment, and no review by this court.

The procedural posture of this case limits our review to the question of whether the actions of the commissioner and the board complied with our Supreme Court's remand order and does not require us to consider the merits of the actions of the board and the commissioner subsequent to our Supreme Court's remand. As we have already determined, the failure by the commissioner and the board to address the specific instructions contained in the mandate of our Supreme Court necessarily resulted in a interlocutory order as opposed to a final judgment. To be sure, "an otherwise interlocutory order is appealable where (1) it terminates a separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them." *Conetta* v. *Stamford*, supra, 246 Conn. 291; see also *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Neither prong is satisfied in the situation presently before us. As we have stated repeatedly, until our Supreme Court's mandate is complied with, the proceedings cannot be deemed terminated or concluded.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[5] It is also unclear whether, assuming arguendo that we were to conclude that a final judgment existed in the present case, that plaintiff's claims were ripe for our review in the absence of a finding on whether the fund was entitled to a credit for the Waterbury settlement. The resolution of that issue would have an impact on some, if not all, of the plaintiff's substantive claims raised in this appeal and, therefore, any discussion of those claims would, in all likelihood, be premature. See *Esposito* v. *Specyalski*, 268 Conn. 336, 346–50, 844 A.2d 211 (2004). We need not engage in a detailed analysis regarding the ripeness issue because we have concluded that the absence of a final judgment or appealable interlocutory order deprives this court of subject matter jurisdiction.